ROLLINS et al. v. LIGGETTS DRUG CO., Inc.
No. 7728.

District Court, E. D. New York.
June 16, 1936.

Bierman & Chandler, of New York City, for plaintiffs.

Louis Schumacher, of New York City (James N. Catlow, of New York City, of counsel), for defendant.

BYERS, District Judge.

This is an action in equity for the infringement of a patent. No issue is made as to infringement; it having been conceded that, if validity is found, the defendant's device infringes the plaintiffs' patent. The individual plaintiffs are the joint patentees named in patent No. 2,005,361 (application filed January 16, 1935; letters issued June 18, 1935) and the corporate plaintiff is the exclusive licensee thereunder.

The device is an article of head-wear for women, consisting of a visor or eye-shade which is attached to one half of a bandana which is cut diagonally for that purpose; the hypotenuse of the right angle triangle so formed is attached to the visor at its inner edge, so that the points of the crescent-like visor are equally distant from the respective ends of the hypotenuse so formed.

The article so constituted is adjusted to the head of the wearer so that the visor performs the office of an eye-shade, and it is held in position by tying said ends of the half bandana at about the nape of the neck of the wearer; the right angle portion of the device falls or drapes down the back of the wearer's head and, when the said ends have been tied in position, the entire cap or headcovering is held firmly in position.

There are two claims, reading as follows:

"1. As an article of manufacture, a cap comprising a piece of material for fitting over the head of a wearer to keep the wearer's hair in place, said piece of material being in the form of an isosceles triangle having two like corners and another corner with adjacent edges at right angles to each other which is designed to drape downwardly at the back of the wearer's head and be held in place against the wearer's hair by the tying together of the other two corners of the triangular piece of material, and a visor attached to said piece of material at the edge thereof which extends between the two like corners, said visor having a curved edge which is attached to the straight edge of the piece of material whereby the piece of material is puckered between the ends of the visor to produce bulging of the material and cause training of the same over and about the forehead of the wearer when the cap is secured in place when the cap is in use.

"2. As an article of manufacture, a cap comprising attached hood and visor portions which provide a fullness in the hood portion adjacent to and in the vicinity of the visor portion for allowing for the conforming of the material of the hood portion to the rounded fore-part of a wearer's head, said hood portion having ends extending substantially laterally of the cap from the ends of the visor and converging rearwardly from said ends so that the cap may be fastened to and cover a wearer's head upon the tying together of the ends over the downwardly extending rearward area of the hood portion at the back of the head, the inner edge of said visor portion being curved and attached to the material of the hood portion along a line thereon different in configuration from that of the inner edge of the visor, the material forming the hood portion of the cap being provided with the desired fullness by its attachment to the relatively stiffer visor."

The specifications and claims make it clear that an essential element of the device is that the visor has a curved edge to which is attached the straight edge of the material (which has been formed into an isosceles triangle as described above) "whereby the piece of material is puckered between the ends of the visor to produce bulging of the material and cause training

of the same over and about the forehead of the wearer" when the cap is in use.

The testimony clearly establishes that a visor, so attached to the bias edge of the material resulting from the cutting of a bandana as described, is held in position so as to shade the eyes of the wearer without confining her vision below a horizontal plane extending about on a level with the eyes; this apparently results from the relation between the material and the visor which results from the puckering of the material where it is in contact with the curved side of the visor. A curved piece of material joined to a curved visor would not produce this effect, nor would a straight-edged piece of material joined to a straight visor, and it is the combination here shown upon which the plaintiffs rely to sustain their patent.

The article itself is novel for while visors held in position by bands or straps have been familiar for many years, and the use of a bandana as a headcovering is almost proverbial, the combination which has been described was new and useful when this patent was granted; the device has found ready and widespread acceptance so that imitation was prompt and accurate, and of course was conducted on a cut-price basis which has been detrimental to the patentees and their licensee.

The defendant urges that the joining of a bias edge to a curved 'edge is old in both dressmaking and millinery, and the evidence justifies that assertion, but this particular application of that well-known practice seems not to have occurred to any one engaged in the industry of producing feminine head-gear prior to this patent.

Apparently the defendant relies upon the following patents to demonstrate plaintiffs' lack of invention:

Harris, No. 1,239,910, granted September 11, 1917, for a headcovering "adapted for the use in the drying of the human hair after the same has been shampooed."

In this article a piece of fabric is joined to a straight visor, straight edge to straight edge; the visor is tied into position by strings of tape passing under the hair of the wearer at the nape of the neck and the fabric element falls over the top of the head and down over the hair. The specifications state:

"This invention relates to a head covering and, more especially, to a covering adapted for the use in the drying of the human hair after the same has been shampooed.

"The object of the invention is to produce a simple and inexpensive device of the character specified which is conveniently attached to the head and which will serve to protect the eyes from the sun and the hair from the burning effect thereof."

The device has a restricted purpose and the construction is essentially dissimilar to that of the plaintiffs'. Nothing is taught by Harris which would suggest the plaintiffs' device. The Harris specifications and claim make no mention of the puckering produced by the association of the straight edge of the fabric and the curved inner edge of the visor, nor is that object sought to be accomplished in any manner. The reasons may be:

(a) The Harris device is not for use while the wearer is active. It is intended to promote protection to the eyes and to the hair of the wearer while she is drying the latter in sunlight, which is believed to be essentially a sedentary occupation.

(b) The position of the visor with respect to the eyes is consequently of no moment apart from its protective function. It is not important that the angle formed by the visor with the forehead of the wearer shall be sufficiently great to admit of an extended range of vision, as in the case of the patented device which is worn in part to render physical activity comfortable and convenient.

If the two devices were indeed similar, their contradictory purposes would have no bearing on the question of invention, but, identity of structure being absent, it is thought that the difference in the objects sought to be accomplished may be consulted in order to emphasize the contrast between the patented articles.

Other patents offered by the defendant as anticipatory have to do with eye-shades, bonnets and sunbonnets, motoring caps, a veil and traveling head-dress, and, strangely enough, a patent issued in 1874 for horse-blinders "to prevent horses from jumping the fence from pasture"; also a British patent for improvements in the hoods of rain capes.

The only patent in this group requiring comment is that of Varginoff, No. 1,495,313, which is the only patent referred to in the file wrapper, and over which this patent was allowed. That covers an improvement in ladies' automobile caps, formed from a single piece of material hav-

ing forward and rear flaps and a peak to extend over the forehead. The device in suit is not an automobile cap, and does not present a visor in association with front and rear flaps.

The variety of articles of feminine head-gear covered by the patents above referred to constitutes an impressive array of devices that differ essentially from this cap. Each possesses its own peculiar characteristics but none is like this in structure or components.

This is more than an eye-shade; it is not a bonnet, nor a motoring cap; certainly it is not a veil, nor is it a hood. It was a new combination of two useful elements, namely, a visor and half of a bandana created by a diagonal bisection.

The combination of those two elements, effected as taught by the patent, resulted in a head covering which had not been anticipated in form or function. It is highly useful, thus being easily distinguished from many other occupants of the same general field of achievement, and is attractive in appearance if not downright ornamental.

If the patentees are not to be protected by excluding others from reaping the benefit of their ingenuity, that result must be achieved elsewhere.

The defendant relies upon several other patents to indicate the state of the art; among them, one for a boudoir cap, another for caps, hats and bonnets consisting of a plurality of parts which are detachably connected, so that they can be taken apart and "laundried." Also a head-band, a cap-attachment for a visor, an eye-shade and a lady's cap.

Doubtless the art which embraced feminine head coverings, when this patent was applied for, contained many more articles than could be summarized in a stout volume of compilation; the defendant's counsel was invited to inquire of his expert if she had ever known of this particular embodiment of two known elements in any other millinery accomplishment, but—perhaps discreetly—he failed to ask the question.

It is possible that the plaintiffs' improvement in caps was known to the art but, if so, that fact has not been shown by the evidence in the case.

The plaintiffs may have the usual decree for injunction and accounting to be settled on notice. If findings are desired, they are to be settled with the decree.